# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-CA-00753-COA

## CONSOLIDATED WITH

## NO. 2015-CA-01105-COA

**MORGAN DAVID EWING, SR.**                                          **APPELLANT**

**v.**

**MELANIE SHAE EWING**                                                      **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 01/02/2019 |
| TRIAL JUDGE: | HON. MITCHELL M. LUNDY JR. |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | JERRY WESLEY HISAW |
| ATTORNEYS FOR APPELLEE: | JUSTIN KEITH THOMAS |
| | DAVID MARK SLOCUM JR. |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED - 04/07/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE BARNES, C.J., WESTBROOKS AND C. WILSON, JJ.**

**BARNES, C.J., FOR THE COURT:**

¶1.     The DeSoto County Chancery Court granted Morgan and Melanie Ewing a divorce based on irreconcilable differences in 2015.  Morgan appealed the decision, and this Court remanded for further findings on the issues of distribution of assets, alimony, and attorney's fees. *Ewing v. Ewing*, 203 So. 3d 707 (Miss. Ct. App. 2016).  On remand, the chancery court ordered Morgan to pay $500 per month in alimony and $11,807.57 in attorney's fees to Melanie.  After the chancery court denied Morgan's motion for reconsideration, he appealed

the award of alimony and attorney's fees.[1]  Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.    Morgan and Melanie were married on July 1, 2000, in Shelby County, Tennessee. They separated on January 2, 2012. Melanie filed a complaint for divorce on the grounds of habitual cruel and inhuman treatment and/or irreconcilable differences on January 17, 2012, seeking custody of the parties' four minor children and a division of the parties' assets.  An agreed temporary order was entered on February 22, 2012, which in part granted temporary custody to Melanie and ordered Morgan to pay $950 in monthly child support.  Morgan lost his job while the litigation was pending and had to file for bankruptcy; so Morgan became in arrears on his child-support payments.

¶3.    After a trial on February 18, 2015, the chancery court granted the parties a divorce on the ground of irreconcilable differences, incorporating the custody and visitation schedule as previously stipulated by the parties.  The court ordered Morgan to pay (1) $950 per month in child support; (2) $500 per month in permanent alimony; (3) $38,000 in lump-sum alimony to be paid in monthly $1,000 increments; (4) $10,000 for Melanie's attorney's fees to be paid in monthly increments of $500; and (5) two-thirds of any uncovered medical expenses for the minor children.  A "Final Decree of Divorce" was entered on April 13, 2015.  Morgan filed a motion for reconsideration or, in the alternative, a new trial pursuant to Rule 59 of the Mississippi Rules of Civil Procedure.  The chancellor found that the child support ordered was in error and decreased the monthly child support to $708.36.  The

---

[1] Morgan is not challenging the chancery court's division of marital assets.

chancellor also gave Morgan credit for $3,050 in child-support payments made to Melanie. The chancellor affirmed the rest of his findings.

¶4.	Morgan appealed the judgment. On November 1, 2016, the Court of Appeals reversed the court's findings on the issues of marital property division, alimony, and attorney's fees. *Ewing*, 203 So. 3d at 717 (¶39). We concluded that the chancery court had failed to make proper findings as to the *Ferguson* factors[2] in the distribution of marital property, which also required a determination on remand of "the need and proper amount of any lump-sum alimony award, if necessary." *Id*. at 714 (¶¶24-25). Also, although we affirmed the chancellor's assessment of periodic alimony, we remanded for reconsideration of the amount taking into account Morgan's standard of living. *Id*. at 715-16 (¶29-30). Lastly, because the chancery court failed to make specific findings "as to Melanie's financial situation or her inability to pay her attorney's fees," we found the award of attorney's fees improper and remanded for further consideration of that issue. *Id*. at 717 (¶37).

¶5.	On October 20, 2017, Melanie filed a motion for contempt and modification, claiming that Morgan had "wilfully and obstinately refused to pay for his share of medical costs," as ordered by the court in the April 2015 divorce decree, and requesting an increase in child support. In a November 20, 2017 order, the chancery court found Morgan in wilful contempt for failing to abide by the court's orders and ordered him to pay Melanie $10,229 in unpaid medical expenses (including $1,000 in attorney's fees).

¶6.	On February 20, 2018, the chancery court issued an order without a hearing, finding

---

[2] *Ferguson v. Ferguson*, 639 So. 2d 921 (Miss. 1994).

that Melanie had a deficit of over $19,000 after the equitable division of marital property and awarding her $500 in monthly periodic alimony. The court also upheld its prior determination to award Melanie $10,000 in attorney's fees. Morgan filed a motion for reconsideration, a motion to set aside the judgment, and a contempt petition that alleged Melanie had not complied with the court-ordered visitation schedule. The parties reached an agreement as to contempt and modification on June 25, 2018, with the court ordering that (1) Morgan pay Melanie $7,600 in unpaid medical bills; (2) Morgan receive seven days of "make-up visitation"; (3) child support be increased to $938.59; and (4) Morgan be responsible for one-half of all medical expenses not covered by insurance.[3]

¶7. The chancery court subsequently set aside its February 2018 order, and a hearing was held on the remaining issues on November 8, 2018. The court issued its opinion on December 14, 2018, dividing the marital property and awarding Melanie $500 per month in periodic alimony and $11,808.57 in attorney's fees paid in monthly installments of $250.[4] A final divorce decree was entered on January 2, 2019. Morgan filed a motion for reconsideration, which the chancery court denied. Aggrieved, Morgan appeals the chancery court's award of permanent periodic alimony and attorney's fees to Melanie.

## STANDARD OF REVIEW

[3] None of the issues addressed in the parties' contempt motions and the court's June 25, 2018 order concerned the issues on remand to the chancery court from the first appeal (i.e., marital property division, alimony, and attorney's fees).

[4] On remand, the court initially awarded Melanie lump-sum alimony in its February 2018 order. After further consideration of the *Ferguson* factors in the distribution of marital assets, the chancery court did not award lump-sum alimony to Melanie in its December 2018 final order.

4

¶8.    We review a chancery court's decision for abuse of discretion, and we will only disturb that decision on appeal if we find that the court's decision "was manifestly wrong, clearly erroneous, or applied an erroneous legal standard." *Archie v. Archie*, 126 So. 3d 937, 941 (¶11) (Miss. Ct. App. 2013). "Questions of law are reviewed de novo." *Id*.

## DISCUSSION

### I.    Alimony

¶9.    In the prior appeal, this Court "affirmed as to the finding of a need for periodic alimony" but remanded for reconsideration of the amount in light of Morgan's standard of living. *Ewing*, 203 So. 3d at 715-16 (¶¶29-30). On remand, the chancery court upheld the award of periodic alimony, concluding that "the award of $500.00 per month in periodic alimony is proper after analyzing Morgan's other financial obligations and his ability to maintain a decent standard of living." The chancery court specifically determined that even after Morgan paid child support, alimony, and the monthly installment for attorney's fees, he "would still net $1,629.52 each month based upon his current income, which is sufficient considering Melanie has [four] children living with her and he only has himself."[5] Morgan argues that the chancery court's award of permanent periodic alimony to Melanie "was unreasonable in light of [his] inability to pay and the income of Melanie."

¶10.    As with other domestic-relation matters, a chancery court's award of alimony is

---

[5] Although Morgan notes the chancery court's error in the order regarding the number of children (i.e., four versus five children), we agree with Melanie that because child support was not calculated based on five minor children, this is simply a scrivener's error that has no substantive effect on either party. While not affecting our analysis of this issue, we have noted a minor discrepancy in the court's calculation of Morgan's net monthly income, which we will address further when we address the award of attorney's fees.

discretionary and will not be reversed on appeal absent a determination that the court's findings of fact were manifestly in error and an abuse of discretion. *Armstrong v. Armstrong*, 618 So. 2d 1278, 1280 (Miss. 1993). "A chancellor's decision to award permanent alimony must consider both need and ability to pay." *Rogillio v. Rogillio*, 57 So. 3d 1246, 1252 (¶24) (Miss. 2011). "In making that decision, the chancellor considers, in relevant part, the reasonable net income and expenses of both spouses." *Id*. (citing *Box v. Box*, 622 So. 2d 284, 288 (Miss. 1993)). "Alimony is considered only after the marital property has been equitably divided and the chancellor determines one spouse has suffered a deficit." *Castle v. Castle*, 266 So. 3d 1042, 1053 (¶43) (Miss. Ct. App. 2018) (quoting *Lauro v. Lauro*, 847 So. 2d 843, 848 (¶13) (Miss. 2003)), *cert. denied*, 267 So. 3d 278 (Miss. 2019).

¶11.    Arguing that the chancery court failed to "balance [Melanie's] needs with [his] inability to pay" in awarding periodic alimony, Morgan contends that Melanie "received over $44,000.00 in assets, [had] no debts, had all of her expenses paid for several years under the temporary order, and currently is a homeowner with over $44,000.00 in separate equity in her home over and above the property division." In contrast, Morgan states that he has a negative estate with approximately $50,000 in debt. He also claims Melanie now earns more than he does.

¶12.    Morgan argues that the chancery court was required to examine the financial positions of the parties both at the time of trial and the time of remand, citing *Yelverton v. Yelverton*, 26 So. 3d 1053 (Miss. 2010). Specifically, Morgan claims that while the chancery court addressed *his* financial position at the time of remand, the court failed to consider Melanie's

current financial position. His main point of contention is that Melanie's salary had increased since 2015, and she now earns more in net monthly income than he does. In *Yelverton*, the chancery court issued a seventeen-page judgment *without a hearing* and upheld awards of alimony and child support. *Id*. at 1056 (¶6). The chancellor "based his decision on testimony and exhibits received at the hearings conducted prior to the original 2004 judgment." *Id*. The appellant claimed the court should have held an evidentiary hearing to consider changes occurring since its original 2004 judgment. *Id*. at (¶10). The Mississippi Supreme Court agreed and reversed and remanded with instructions to the court to "conduct an evidentiary hearing" in order to determine the following: (1) the value of marital assets no later than the date of divorce and based on evidence presented at the remand hearing; (2) "the amount of periodic alimony and child support due up until the time of the remand hearing" based on circumstances up until the remand hearing; and (3) "the amount of periodic alimony and child support going forward from the time of the remand hearing, which shall be determined based on the circumstances existing at the time of the remand hearing." *Id*. at 1057 (¶13).

¶13. Unlike *Yelverton*, the chancery court in this case determined that the periodic alimony award of $500 was appropriate after conducting an evidentiary hearing and considering the parties' incomes and expenses at trial and up to remand. The chancery court noted in its order that Melanie's net monthly income, as of February 18, 2015, was $851.70, while her net expenses were $2,830.00, and that she "lost approximately $2,000 per month simply paying her bills." Morgan's monthly net income, as of February 2015, was $2,579.35, while

7

his net expenses were $2,329.39 before the child-support payment.

¶14.    With regard to the parties' finances up to remand, the chancery court's order admittedly failed to mention Melanie's more recent Rule 8.05 financial declaration dated June 2018, which showed her net monthly income had increased to $2,991.32.[6]  However, the chancery court found that both parties "essentially live paycheck to paycheck *with their current living expenses*."  (Emphasis added).  This finding is supported by the evidence. Melanie's combined total expenses from her 2018 Rule 8.05 financial declaration were $3,840.53, still leaving her with a significant deficit. Furthermore, although Melanie's salary and wages significantly increased to $3,114 in 2018, she still earns less than Morgan. According to his financial declarations, Morgan's salary and wages increased from $3,620 in 2015 to $4,752.80 in 2018.

¶15.    Accordingly, we do not find that the court's award of periodic alimony was manifestly in error or an abuse of discretion, and we affirm on this issue.

## II.    Attorney's Fees

¶16.    Morgan claims that the chancery court also erred in awarding Melanie attorney's fees in the amount of $11,808.57.  "Attorney's fees may only be awarded to a party who has shown an inability to pay his or her own fees . . . [, and] chancellors are instructed to make specific findings regarding the recipient's ability to pay." *Evans v. Evans*, 75 So. 3d 1083, 1089 (¶22) (Miss. Ct. App. 2011).  Addressing the factors in *McKee v. McKee*, 418 So. 2d 764, 767 (Miss. 1982), the chancery court found that Melanie had "incurred $11,808.57 in

_____

[6] UCCR 8.05.

8

attorney's fees by a skilled attorney as a result of litigation spanning three (3) years which required a large degree of responsibility in management and time and precluded the prior legal counsel from other employment." The court expressly determined that Melanie had an inability to pay her attorney's fees, noting that Melanie's 2015 financial declaration from the trial indicated a net monthly income (before child support) of $851.70 and net monthly expenses of $2,830.00, leaving her with a monthly deficit of $1,978.30.

¶17.    Morgan claims that the chancery court erred in failing to take into account his inability to pay attorney's fees as evidenced by his Rule 8.05 financial declarations. This Court has held that "[w]here neither party is able to pay more than his or her own fees, an award of attorney's fees is inappropriate." *Evans*, 75 So. 3d at 1089 (¶24) (citing *Sarver v. Sarver*, 687 So. 2d 749, 755 (Miss. 1997), *overruled on other grounds by Pearson v. Pearson*, 761 So. 2d 157, 163 (¶17) (Miss. 2000)). We find that the record indicates the chancery court did consider Morgan's ability to pay in its order, stating:

> Currently, Morgan's net monthly income after payment of child support is $2,629.52. Morgan['s] net income before payment of child support as of the date of divorce was $2,579.35. Morgan is directed to pay periodic alimony in the amount of $500.00 per month and $250.00 per month towards Melanie's attorney's fee, then he would still net $1,629.52 each month based upon his current income, which is sufficient considering Melanie has [four] children living with her and he only has himself.

Reviewing Morgan's 2018 financial declaration, we note a minor discrepancy between the court's calculation and ours—we find that Morgan would actually have a net monthly income of $1,879.53 (after taxes, insurance, child support, alimony, and attorney's fees are deducted from his monthly income). Nevertheless, this amount is greater than the chancery court's

determination, and Morgan's net monthly income has increased since 2015. Therefore, we find no merit to his argument and affirm the chancery court's award of attorney's fees to Melanie.

¶18. **AFFIRMED.**

**CARLTON AND J. WILSON, P.JJ., GREENLEE, WESTBROOKS, TINDELL, McDONALD, LAWRENCE, McCARTY AND C. WILSON, JJ., CONCUR.**